UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTINA D.[1],

      Plaintiff,

v.                                             1:21-CV-162 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____

### DECISION AND ORDER

Plaintiff Christina D. brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act, seeking review of the decision made by the Commissioner of the Social Security Administration finding that she was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 9. The Commissioner responded and cross-moved for judgment on the pleadings. Dkt. 10. For the reasons below, the Court grants Plaintiff's motion and denies the Commissioner's cross motion.

---

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this decision and order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

This action originates from Plaintiff's application for Supplemental Security Income ("SSI") filed on June 7, 2017. Tr 403.[2] Plaintiff's application was initially denied, and she requested a hearing before an administrative law judge ("ALJ"). Tr. 351-390. Following the hearing, ALJ David J. Begley issued a decision finding that Plaintiff was not disabled. Tr. 13-29. Plaintiff's request for Appeals Council review was denied, after which Plaintiff commenced this action. Tr. 1-7; Dkt. 1.

## LEGAL STANDARDS

### I. District Court Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). The Commissioner's factual findings are conclusive when supported by substantial evidence. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).

While the Court does not determine *de novo* whether the claimant is disabled, the Commissioner's conclusions of law are not given the same deferential standard

---

[2] The filings at Dkts. 6 and 7 are the transcript of the proceedings before the Social Security Administration. All references to Dkts. 6 and 7 are hereby denoted "Tr. __."

of review. *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). If there is a reasonable doubt as to whether the ALJ applied the correct legal standards, then upholding the determination "creates an unacceptable risk that a claimant will be deprived of the right to have his disability determination made according to correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *see Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)) (holding that the Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the . . . Act.").

## II. Disability Determination

Disability under the Act is determined under a five-step test. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); 20 C.F.R. § 416.920. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities and is normally done for pay or profit. 20 C.F.R. § 416.972. If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. *Id.* § 416.920(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(c). Absent such impairment, the claimant may not claim disability. *Id.*

3

Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If such criteria are met, then the claimant is declared disabled. *Id.* § 416.920(d).

Even if the claimant is not declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(e). The RFC is a holistic assessment of the claimant's medical impairments, both severe and non-severe, that evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *Id.* § 416.945.

In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 416.920(f). If the claimant is capable of performing past relevant work, then the claimant is not disabled. *Id.* § 416.960(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, the analysis proceeds to the fifth and final step. *Id.* § 416.920(g)(1).

In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her/his RFC, age, education, and work experience. 20 C.F.R. § 416.960(c). Here, the burden of proof shifts from the claimant to the Commissioner to prove that a significant number of jobs in the national economy exists that the claimant can perform given her or his

RFC, age, education, and work experience. 20 C.F.R. § 416.920(g), 416.960(c); *see Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

## DISCUSSION

### I.   The ALJ's Decision

The ALJ determined that Plaintiff had engaged in substantial gainful activity in the first quarter of 2019. Tr. 18. But the ALJ concluded that, even though Plaintiff engaged in substantial gainful activity during part of the relevant time period, her claim for benefits would be evaluated as of the application date and including those periods when she engaged in substantial gainful activity. *Id.* The ALJ found that Plaintiff suffered from the following severe impairments: psychiatric impairments alternatively diagnosed as bipolar disorder, post-traumatic stress disorder ("PTSD") with anxiety, personality disorder, and attention deficit hyperactivity disorder ("ADHD"). Tr. 18-19. The ALJ concluded that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 19.

After considering the entire record, the ALJ determined that Plaintiff had the RFC to perform work at all exertional levels with the following limitations:

> needs to avoid excessive noises; limited to working with simple, routine, and repetitive tasks in a low stress job, defined as being free of fast-paced production requirements, no hazardous conditions, occasional decision making required, and occasional changes in the work setting; occasional interaction with coworkers and supervisors; and no direct interaction with the general public.

Tr. 21.

The ALJ found that Plaintiff was capable of performing past relevant work as a housekeeping cleaner. Tr. 24. In the alternative, the ALJ concluded that Plaintiff was not disabled because her age, education, work experience, and RFC allowed her to perform jobs existing in significant numbers in the national economy. Tr. 24-26. The ALJ concluded that Plaintiff had not been under a disability since her application date of June 7, 2017. Tr. 26.

## II. Plaintiff's Argument

Plaintiff argues that the ALJ erred in his evaluation of the opinion provided by consultative examiner, Janine Ippolito, Psy.D. Dkt. 9 at 9-15. Plaintiff also argues that the Appeals Council erred in rejecting additional evidence. *Id* at 15-18.

## III. Analysis

### A. Consultative Examiner, Janine Ippolito, Psy.D.

Plaintiff argues that the ALJ erred in his evaluation of Dr. Ippolito's opinion. Dkt. 9 at 9-15. First, Plaintiff asserts that the ALJ erred in concluding that Dr. Ippolito's opinion of marked limitations in regulating emotions, controlling behavior, and maintaining well-being was inconsistent with Plaintiff's ability to perform daily activities. *Id.* at 11. Second, Plaintiff argues that the ALJ failed to articulate why Plaintiff could interact with coworkers and supervisors, despite not being able to deal with the public. *Id.* at 14-15. Remand is required for a proper evaluation of Dr. Ippolito's medical opinion.

Under 20 C.F.R. § 416.920c, the ALJ must articulate how he or she considered certain factors in assessing medical opinions and prior administrative

6

findings. *See* 20 C.F.R. § 416.920c(a)-(c)[3]. The regulatory factors are: (1) supportability, (2) consistency, (3) relationship with the claimant (which has five sub-factors of its own to consider), (4) specialization, and (5) other factors. *Id.* § 416.920c(c). An ALJ must explain his or her approach with respect to the first two factors when considering a medical opinion, but need not expound on the remaining three. *Id.* § 416.920c(b). The ALJ is tasked with analyzing medical opinions at the source-level, meaning that the ALJ need not discuss each and every medical opinion in the record, and may apply the factors holistically to a single medical source. *Id.* § 416.920c(b)(1).

The first factor—supportability—looks at how well a medical source supported and explained his or her opinions about the patient. The strength of a medical opinion is increased as the relevance of the objective medical evidence and explanations increase. 20 C.F.R. § 416.920c(c)(1). The second factor—consistency—looks at whether a medical provider's findings and opinions are consistent with those of other medical providers and medical evidence. The more consistent a particular medical source opinion is with other evidence in the medical record, the stronger that medical opinion becomes. *Id.* § 416.920c(c)(2).

---

[3] A prior administrative medical finding is a finding, other than the ultimate determination about whether a plaintiff is disabled, about a medical issue made by the SSA's Federal and State agency medical and psychological consultants at a prior level of review in a plaintiff's current claim based on their review of the evidence in plaintiff's case record. 20 C.F.R. § 416.913(a)(5).

On May 25, 2018, Dr. Ippolito examined Plaintiff and provided a medical source statement. Tr. 651-656. On examination, Dr. Ippolito observed that Plaintiff was cooperative, and her manner of relating, social skills, and overall presentation were adequate. Tr. 652. She observed that Plaintiff appeared her stated age, her mode of dress was casual, she was fairly groomed, she was tense and restless, and her eye contact was appropriate. *Id.* Plaintiff's speech was fluent and clear, and her language was adequate. *Id.* The doctor noted that Plaintiff's thought processes were coherent and goal directed with no evidence of hallucinations, delusions, or paranoia. *Id.* Plaintiff's affect was anxious, her sensorium was clear, and she was oriented. *Id.*

Dr. Ippolito also observed that Plaintiff's attention and concentration were impaired "due to suspected limited intellectual functioning." Tr. 654. Dr. Ippolito noted that Plaintiff could do counting and one-step calculations without errors, but had difficulty with two-step calculations and serial subtraction tasks. *Id.* Dr. Ippolito noted that Plaintiff's recent and remote memory skills were "impaired due to suspected limited intellectual functioning." *Id.* The doctor noted that Plaintiff could recall three out of three objects immediately, but needed the objects repeated twice. *Id.* Plaintiff also recalled one out of three objects after a delay. *Id.* Plaintiff could state three numbers forward and two numbers backwards. *Id.* Dr. Ippolito noted that Plaintiff's insight was fair, and her judgment was poor. *Id.*

Dr. Ippolito opined that Plaintiff could understand, remember, and apply simple direction and instructions; had moderate limitations in complex directions

8

and interacting with others; and had a marked limitation in regulating emotions, controlling behavior, and maintaining well-being. Tr. 651-656.[4]

The ALJ concluded that Dr. Ippolito's opinion was "persuasive to the extent it supports up to moderate mental limitations." Tr. 23. The ALJ reasoned that the doctor's opinion—that Plaintiff had moderate limitations—was consistent with and supported by the medical record "documenting episodically occurring abnormal clinical presentations." *Id.* The ALJ stated that he disagreed with Dr. Ippolito's opinion that Plaintiff had marked limitations. *Id.* The ALJ reasoned that marked limitations were inconsistent with Plaintiff's ability to "perform fairly robust activities of daily living including working at substantial gainful activity levels and caring for her young children." *Id.*

Here, the ALJ erred in his evaluation of Dr. Ippolito's opinion that Plaintiff had marked limitations. The ALJ stated that he disagreed with Dr. Ippolito's assessment of marked limitations, "in light of [Plaintiff's] ability to perform fairly robust activities of daily living including working at substantial gainful activity levels and caring for her young children." Tr. 23. The ALJ's statement fails to explain the supportability and consistency of Dr. Ippolito's opinion of marked limitations and constitutes procedural error. *Loucks v. Kijakazi*, No. 21-CV-1749, 2022 WL 2189293, at *2 (2d. Cir. June 17, 2022) (finding that "the ALJ committed procedural error by failing to explain how it considered the supportability and

---

[4] Regulating emotions, controlling behavior, and maintaining well-being are abilities within the mental functioning area of "adapt or manage oneself." *See* 20 C.F.R. § 416.920a(c)(3); 20 C.F.R. § 404 Subpt. P, App. 1, 12.00A(E)(4).

9

consistency of medical opinions in the record"). Although the ALJ adequately discussed the supportability and consistency of the doctor's opinion of moderate limitations, the ALJ failed to explain adequately how he considered the factors in assessing the doctor's opinion of marked limitations.

An ALJ's procedural error may be found harmless if "a searching review of the record assures us that the substance of the [regulation] was not traversed." *Loucks,* 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (citing *Estrella v. Berryhill,* 925 F.3d 90, 95 (2d Cir. 2019) (internal quotations omitted). Here, as in *Loucks,* the ALJ's procedural error was not harmless. *Id.* A searching review of the record does not assure the Court that the substance of the regulations was not traversed.

Plaintiff's ability to engage in some work activity and care for her children, "did not show that [Plaintiff] could hold down a steady job for an extended period of time." *Loucks,* 2022 WL 2189293, at *2; *see Colgan v. Kijakazi,* 22 F.4th 353, 363 (2d Cir. 2022) (evidence that plaintiff could "to some extent" care for her children and engage in activities necessary to her own welfare did not provide substantial evidence to discount medical opinion); *see also Malia Ann B. v. Comm'r of Soc. Sec.,* No. 5:21-CV-1362, 2023 WL 2838054, at *11 (N.D.N.Y. Feb. 23, 2023), *report and recommendation adopted,* 2023 WL 2623865 (N.D.N.Y. Mar. 24, 2023) ("The undersigned agrees that an ALJ is entitled to consider a plaintiff's activities of daily living; however, there must be a logical connection between the purported activities and the ALJ's RFC discussion and determination.").

To be sure, Plaintiff performed work during the relevant time period, including work that qualified as substantial gainful activity. Tr. 18. However, the record indicates that Plaintiff was let go of her position as a housekeeper due to a conflict with a guest. Tr. 360. Plaintiff was also discharged from a doctor's care because she became "angry" and "vulgar" with the provider. Tr. 642. Plaintiff testified that she cared for her children. Specifically, the record indicates that Plaintiff helped her children get ready for school (Tr. 367) and that she cooked dinner and colored with them (Tr. 370). It is unclear how this evidence supports the ALJ's conclusion that Plaintiff had less than marked limitations in her ability regulate emotions, control behavior, and maintain well-being. *See Claudio-Montanez v. Kijakazi*, No. 21-2027, 2022 WL 17819123, at *6 (2d Cir. Dec. 20, 2022) ("Preparing meals and tending to one's personal care are markedly different than working full-time.")

Plaintiff makes the related argument that the ALJ's decision fails to explain adequately what evidence in the record supports the social limitations presented in the RFC. Dkt. 9 at 14-15. Plaintiff asserts that the ALJ failed to explain the distinctions in evidence, which allowed her to conclude that Plaintiff could interact with co-workers and supervisors, but not with the public. *Id.* This argument fails. The social limitations in the RFC are supported by Dr. Ippolito's opinion—that Plaintiff had moderate limitations interacting with others—and additional evidence in the record. Tr. 23, 651-656. Indeed, the ALJ imposed greater limitations interacting with the public than opined by Dr. Ippolito. *See Riederer v. Comm'r of*

11

*Soc. Sec.*, 464 F. Supp. 3d 499, 505-506 (W.D.N.Y. 2020) (ALJ did not err in formulating a more restrictive RFC than provided by opinion evidence).

Although there is no error in the ALJ's conclusion concerning Plaintiff's social limitations, the ALJ's error in assessing Dr. Ippolito's marked limitations compels further assessment of Plaintiff's overall RFC.

### B.  Evidence Presented to the Appeals Council

Plaintiff argues that the AC failed to consider submitted evidence that "would change the outcome of the decision." Dkt. 9 at 15-18. Because remand is required for a proper evaluation of medical opinion evidence, any additional evidence submitted to the Administration can be addressed on remand.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings (Dkt. 9) and **DENIES** the Commissioner's cross motion for judgment on the pleadings (Dkt. 10). The decision of the Commissioner is **VACATED**, and the matter is **REMANDED** for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:    August 30, 2023
          Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE